# BURSOR & FISHER
### P.A.

**888 SEVENTH AVENUE**
**NEW YORK, NY 10019**
www.bursor.com

**MAX S. ROBERTS**
Tel: **646.837.7408**
Fax: **212.989.9163**
mroberts@bursor.com

March 28, 2023

The Honorable LaShann DeArcy Hall
225 Cadman Plaza East, Courtroom 4H North
Brooklyn, NY 11201

      Re:    *Millman v. Mars, Incorporated*, Case No. 2:23-cv-00079-LDH-SIL
             <u>Plaintiff's Response To Defendant's Pre-Motion Letter</u>

Dear Judge DeArcy Hall:

      I represent Plaintiff Arlene Millman ("Plaintiff") in the above-referenced matter. I write pursuant to Rule III.A.5 of Your Honor's Individual Rules to respond to Defendant Mars, Inc.'s ("Defendant") March 21, 2023 pre-motion letter regarding its anticipated motion to dismiss ("PML"). For the reasons stated herein, Defendant's motion should be denied.[1]

## I.    PLAINTIFF HAS ARTICLE III STANDING

      Defendant contends that "Plaintiff simply cannot assert any injury" "[b]ecause [she] does not allege that the Product she actually purchased contained Heavy Metals" and that "she has failed to plead *any* risk of physical harm or economic injury." PML at 2 (emphasis in original). *First*, Plaintiff alleges an economic injury: the price premium she paid for chocolate which contained or risked containing heavy metals. *See, e.g.*, Compl. ¶¶ 6, 54. Numerous courts have held that such an injury confers standing. *See, e.g.*, *Clinger v. Edgewell Personal Care Brands, LLC*, 2023 WL 2477499, at *6 (D. Conn. Mar. 13, 2023) (standing alleged where "plaintiffs properly claim that they would not have paid as much or anything for their sunscreen had the label warned of the risk of benzene contamination"); *Gagetta v. Walmart, Inc.*, --- F. Supp. 3d ---, 2022 WL 17812924, at *4 (N.D. Cal. Dec. 19, 2022) (standing alleged where "plaintiffs' theory of injury is that they purchased products that they otherwise would not have purchased, or would have paid less for, had they known the products contained *or risked containing* certain heavy metals") (emphasis in original) *Barnes v. Unilever United States Inc.*, 2022 WL 2915629, at *1 n.1 (N.D. Ill. 2022) ("Barnes's theory of injury holds water even if based on the proposition that she would not have purchased the product had she known of the risk it contained benzene," "even if … [the] benzene contamination applied only to some limited lots of [Unilever's] product.").

      *Second*, Defendant's argument conflates whether Plaintiff has standing with the question of whether Plaintiff's claims have merit and should thus be rejected. *Gagetta*, 2022 WL 17812924, at *5 ("[W]hether these levels of metals are safe is a hotly contested issue of fact … Accordingly, they are inappropriate to resolve on a motion to dismiss because they go to the merits of the plaintiffs' claims."); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 846 (N.D. Cal. 2018) ("Defendants argue that plaintiffs cannot show any cognizable injury, because they cannot establish that defendants' Products contain unsafe amounts of arsenic, lead, or BPA.

---

[1] Plaintiff dismisses her request for injunctive relief without prejudice.

Defendants' arguments largely go to the merits of plaintiffs' claims, and not their standing to bring those claims."). As it stands, Plaintiff has plausibly alleged that the dark chocolate products contained (or risked containing) cadmium and lead at unsafe levels. Compl. ¶¶ 16-21. Further, even if the heavy metals in the dark chocolate were present at safe levels (and they are not), it would invariably be true that dark chocolate contaminated with heavy metals is not worth as much as dark chocolate without heavy metals, and so Plaintiff would still not have received the benefit of her bargain. *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 692 (E.D. Mich. 2020) ("Because defective trucks are just not worth as much as defect-free trucks, Plaintiffs have adequately alleged an economic injury.").

## II.     PLAINTIFF'S CLAIMS ARE NOT PREEMPTED, AND THE PRIMARY JURISDICTION DOCTRINE DOES NOT APPLY

Defendant argues this case should be stayed under the primary jurisdiction doctrine because "[t]he FDA has been studying Heavy Metals in the food supply for decades, and recently launched a comprehensive initiative to set 'action levels' for foods commonly eaten by children based on 'toxicological research' and 'stakeholder engagement.'" PML at 3. But "[t]he primary jurisdiction doctrine has a relatively narrow scope, and does not apply when claims involve matters within the traditional realm of judicial competence [such as the instant action]." *McNulty v. Polar Corp.*, 2020 WL 5658667, at *6 (S.D.N.Y. Sept. 23, 2020) (cleaned up) (declining to stay action under primary jurisdiction doctrine); *see also*, *e.g.*, *In re Plum Baby Food Litigation*, 2022 WL 16640802, at *1 (N.D. Cal. Jan. 12, 2022) (denying application of primary jurisdiction doctrine because "[t]he Court need not rely on the FDA's expertise or its potential guidance on action labels to determine whether Plum's alleged omissions are actionable given the allegations of the operative complaint."); *City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1065 (N.D. Ill. 2016) ("[T]he Court is not being asked to adjudicate whether opioids are appropriate for the treatment of chronic, non-cancer pain or whether defendants' drugs' labels are accurate, but whether defendants deliberately misrepresented the risks, benefits, and superiority of opioids when marketing them to treat chronic pain."). Thus, "[a]bsent some plausible proposal for obtaining a determination from the FDA, a stay would do nothing more than hold [Plaintiff's] claim in limbo." *Chavez v. Church & Dwight Co.*, 2018 WL 2238191, at *8 (N.D. Ill. May 16, 2018).[2]

Defendant also contends the "FDA's historical work concerning Heavy Metals in food supports dismissal under the conflict preemption doctrine" because Plaintiff's claims seek to impose requirements that directly conflict with FDA's considered judgment about the safety and labeling of food with Heavy Metals." PML at 3. On the contrary, the dark chocolate's contamination with heavy metals renders it adulterated under the FDCA. 21 U.S.C. § 342. Thus, Plaintiff's claims parallel FDA requirements rather than imposing additional ones. *Clinger*, 2023 WL 2477499, at *9-11.

---

[2] Defendant's citation to *In re Beech-Nut Nutrition Co. Baby Food Litigation*, --- F. Supp. 3d ---, 2023 WL 350818 (N.D.N.Y. Jan. 19, 2023) is inapposite because the deference to the FDA seems to hinge chiefly on an "Action Plan" from the department closely tailored to the issue of heavy metal content in *baby foods specifically*. *Id.* at *2 (describing Action Plan that includes, *inter alia*, "proposing action levels for certain elements in categories of *baby foods and other foods commonly eaten by babies and young children*.") (emphasis added).

### III. PLAINTIFF STATES CLAIMS FOR GBL §§ 349-350 AND UNJUST ENRICHMENT

Defendant argues that the presence of Heavy Metals in its Products is immaterial to a reasonable consumer's purchasing decision and thus cannot serve as a basis for a claim under GBL §§ 349 and 350. PML at 3. *First*, whether Defendant's omissions would mislead a reasonable consumer is a question of material fact and not appropriate for the Court's resolution at the motion to dismiss stage. *Tomassini v FCA US LLC*, 2016 WL 11707888, at *5 (N.D.N.Y November 23, 2016) ("[W]hether a reasonable consumer acting reasonably would be misled by Defendant's omission that the aluminum alloy used was failing due to stress corrosion cracking is a genuine question of material fact for a jury and not for the Court's resolution."). *Second*, while the term "material" is undefined in Section 349, New York courts have held that materiality "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Id.* (cleaned up). Despite Defendant's contention to the contrary, Plaintiff has plausibly alleged that the presence of Heavy Metals in the Products is material to reasonable consumers, particularly because "[n]o amount of lead is known to be safe" (Compl. ¶ 14) and cadmium is known to "cause cancer and targets the body's cardiovascular, renal, gastrointestinal, neurological, reproductive, and respiratory systems." Compl. ¶ 15; *see also* Compl. ¶ 5 ("No reasonable consumer would know, or have reason to know, that the Products contain (or risk containing) Heavy Metals."); ¶ 6 ("Plaintiff Millman believed she was purchasing quality and safe dark chocolate that did not contain (or risk containing) Heavy Metals.").[3]

Next, Defendant argues that unjust enrichment claims are routinely dismissed as duplicative. PML at 3. However, unjust enrichment claims may be pled in the alternative, and they are not mutually exclusive with other types of claims. *See, e.g.*, Fed. R. Civ. P 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); *Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701, 706 (2nd Cir. 2020) ("[A] plaintiff may plead unjust enrichment in the alternative to a breach of warranty claim."). Defendant does not otherwise dispute Plaintiff has sufficiently alleged her unjust enrichment claim, nor can it.

---

[3] Defendant relies on *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019)*,* which is distinguishable because it dealt with "negligible amounts of glyphosate" and the complaint lacked allegations demonstrating any harm that could be caused by glyphosate to dogs. Unlike *Parks*, Plaintiff alleges that the Products "expose consumers to 112% of California's maximum allowable dose level (MADL) in just a single one ounce serving" and that "[t]he Products also expose consumers to a significant amount of lead." Compl. ¶ 21. Plaintiff's Complaint also details the dangers associated with exposure to Heavy Metals. *See, e.g., id.* ¶ 20 ("[T]he danger is greatest for pregnant people and young children because the metals can cause developmental problems … but there are risks for people of any age because frequent exposure to lead can lead to nervous system problems, hypertension, immune system suppression, kidney damage, and reproductive issues.) (internal quotations omitted).

Respectfully submitted,

*[signature]*

Max S. Roberts

*Attorney for Plaintiff*